**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X   Index No.
YASBLEIDY GIRALDO,

                Plaintiff,                            **COMPLAINT**

                - against -

AMERICAN AIRLINES GROUP INC.,         **PLAINTIFF DEMANDS**
                                                            **A TRIAL BY JURY**

                Defendant.
------------------------------------------------------------------------X

Plaintiff, YASBLEIDY GIRALDO by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of AMERICAN AIRLINES GROUP INC., ("Defendant") upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to the religion and national origin discrimination provisions of the (i) **Section 1981 of the Civil Rights Act of 1866,** 42 U.S.C. § 1981 ("Section 1981"); (ii) **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL") and (iii) the **New York City Human Rights Law,** New York City Administrative Code § 8-107(1), et seq. ("NYCHRL"), and seeks damages to redress the injuries she has suffered as a result of being **discriminated against** by Defendant, a Domestic Airline and place of public accommodation, on the basis of her **Religion and National Origin (Middle Eastern)** which caused her physical, mental and emotional distress as a result of the Defendant's conduct.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over PLAINTIFF's claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that the events or omissions giving rise to the claims occurred within the Eastern District of New York. 28 U.S.C. § 1391(b).

## PARTIES

5. At all times material, YASBLEIDY GIRALDO ("Plaintiff"), was and is a woman of Middle Eastern and Latino descent, and a resident of the State of Florida.

6. At all times material, Plaintiff was married to and traveling with Ali Moghaddam ("Mr. Moghaddam"), a former well-established FBI agent within the Joint Terrorism Task Force of the FBI.

7. At all times material, AMERICAN AIRLINES GROUP INC., ("Defendant") was and is a major domestic airline carrier incorporated in the State of Delaware and headquartered at 1 Skyview Drive, Fort Worth, TX 76155.

8. At all times material, Defendant was and is a major domestic airline carrier providing airline flights to the public.

## MATERIAL FACTS

9. On or about September 16, 2022, Plaintiff, her husband Mr. Moghaddam, and Plaintiff's two children (a three-year-old child named Amir Mateo Moghaddam, and a one-year-old child named Arianna Moghaddam), boarded American Airlines Flight AA2724 to New York.

10. The flight departed from Fort Lauderdale, FL at 11:04 A.M. on Friday, September 16, 2022, and landed at JFK Airport in Queens, New York at 1:57 P.M.

11. During the flight, Plaintiff and her children were seated in the first row directly behind first

class. Mr. Moghaddam was seated in the back of the plane.

12. Approximately thirty minutes into the flight, Plaintiff's youngest daughter needed an urgent diaper change and began crying and getting restless. Plaintiff asked the flight attendant (Name Unknown) ("Front Flight Attendant") in the front of the plane if Plaintiff could use the restroom closest to Plaintiff's seat in order to not leave her three-year-old unattended for too long.

13. The Front Flight Attendant told Plaintiff she was unable to use the front bathroom and must use the bathroom in the back of the plane.

14. Plaintiff then noticed various other non-first-class passengers (and non-Muslim passengers) using the bathroom in the front of the plane while Plaintiff and her children were inexplicably forced to use the bathroom in the back of the plane.

15. Notably, Plaintiff and her family are Muslim, have Islamic surnames, have middle eastern features, and were speaking Farsi with each other.

16. Plaintiff did as instructed and took her child to the back of the plane, waited in line, and used the bathroom in the back of the plane while leaving her son unattended for approximately ten minutes.

17. After using the bathroom at the back of the plane, Plaintiff found a different flight attendant (Name Unknown) ("Back Flight Attendant") and asked the Back Flight Attendant if Plaintiff would be able to use the bathroom in the front of the plane or if it was against policy. The Back Flight Attendant told Plaintiff that it was fine to use either bathroom and that there was no prohibition towards using the bathroom in front of the plane.

18. After waiting in line, Plaintiff finally entered the bathroom and changed the child's diaper. Plaintiff then gave the one-year-old child to her husband and hurried back to check on her

son.

19. At that point, Plaintiff's three-year-old son had to urgently use the bathroom. As such, knowing there were no prohibitions to Plaintiff using the front bathroom, Plaintiff rushed into the bathroom with her three-year-old son.

20. The Front Flight Attendant saw Plaintiff approaching the front bathroom and snapped at Plaintiff telling Plaintiff she cannot use the bathroom in front of the plane. Plaintiff responded by explaining that the Back Flight Attendant had stated there were no prohibitions to Plaintiff for using either bathroom. Plaintiff then entered the restroom with her child as the child was about to wet himself.

21. As Plaintiff entered the bathroom, she heard the lock click and realized she had been locked in from the outside. When Plaintiff tried to turn the knob to exit the bathroom but was unable to open the door.

22. The Front Flight Attendant then mocked Plaintiff and sneered through the door, "oh, are you locked in, do you need someone to open the door, ma'am?"

23. Notably, this caused extreme distress and panic for Plaintiff and her child as Plaintiff suffers from severe claustrophobia and anxiety when flying.

24. Plaintiff in her agony started vehemently banging on the door; but then realized that her son was extremely traumatized and was crying, so she gathered all her strength and tried to contain herself and comfort him.

25. After some time, the Front Flight Attendant unlocked the door and allowed Plaintiff and her three-year-old son to return to their seats.

26. Understandably, both Plaintiff and her child were shaken and frantic due to having been trapped against their will in a small bathroom.

27. Plaintiff did the best she could to calm her children. After a few minutes, both children were calm, and the infant had fallen asleep in Plaintiff's arms.

28. Moments later, the Supervising Flight Attendant approached Plaintiff and began to publicly scold Plaintiff and berate Plaintiff for using the bathroom in front of the plane.

29. The Supervising Flight Attendant then told Plaintiff that the plane was under a terrorist attack warning due to her and that she was responsible for a terrorist incident, belittling Plaintiff by wagging her finger in Plaintiff's face and yelling that Plaintiff must apologize. For a moment, Plaintiff was speechless at what was just said to her. After gathering herself, Plaintiff responded stating that she had been locked in the bathroom with her three-year-old son, and that the Front Flight Attendant should apologize.

30. The Supervising Flight Attendant then called Plaintiff a liar, claimed "no such thing" had been done, and continued to publicly berate Plaintiff.

31. Plaintiff once again felt trapped and powerless as the Supervising Flight Attendant continued to scream at Plaintiff, while Plaintiff was holding her two children.

32. Plaintiff felt humiliated and frustrated that the flight attendants would treat Plaintiff in such a demeaning and hostile manner.

33. Plaintiff then began crying as the Supervising Flight Attendant continued to scream claiming that Plaintiff had "caused a terrorist incident and that the Pilot had called in a terrorist alert"

34. Notably, multiple other non-Muslim and non-first-class passengers had used the bathroom in the front of the plane all without incident and without triggering a terrorist alert.

35. When the plane landed back at JFK Airport, the Front Flight Attendant and the Pilot used the intercoms to order everyone to remain seated. Then, multiple police officers from the

NY Port Authority walked onto the plane, and in front of all the passengers, escorted Plaintiff and her family off the plane.

36. One officer then yelled at Mr. Moghaddam to "grab the bags and get off the plane."

37. After being escorted off the plane, Plaintiff was interrogated by two officers in the terminal for approximately fifteen minutes in front of the boarding gate. All passengers gawked at Plaintiff and her family as the officers continued to interrogate her.

38. Ultimately, the officers allowed Plaintiff and her family to leave. However, Plaintiff was so distraught and shaken she was unable to leave and sat crying in the terminal for approximately thirty minutes.

39. Plaintiff was frustrated, humiliated, and offended that the flight attendants and Pilot would call in a "terrorist alert" against Plaintiff, simply for using a bathroom with her child.

40. Indeed, Plaintiff immediately understood the "terrorist alert" was due solely to Plaintiff's appearance as a Muslim and Middle Eastern woman, with middle eastern features, and a middle eastern accent. Indeed, the flight attendants had heard Plaintiff speaking in Farsi to her family and had noted Plaintiff's middle eastern accent.

41. Notably, various other non-Muslim passengers used the front bathroom, all without triggering a terrorist alert. However, when Plaintiff attempted to use the front bathroom, to prevent her son from wetting himself, Defendant reacted by calling a terrorist alert.

42. Defendant would not have acted in such a discriminatory and offensive manner, and would not have called a terrorist alert, if not for Plaintiff's appearance as a Muslim Middle Eastern woman and the use of Farsi language to communicate with her children. Defendant discriminated against Plaintiff by assuming Plaintiff was a "terrorist" due to Plaintiff's use of Farsi language to communicate with her children, and the names of her children.

43. Approximately one week later, Plaintiff filed a formal complaint through Defendant's online "comment" portal but received no meaningful response.

44. As a result of Defendant's actions, Plaintiff feels demeaned, humiliated, degraded, and discriminated against due to her religion, race, and nationality as a minority and as an Middle Eastern woman.

45. Defendant, as a large and well-known airline carrier, acted with discriminatory intent when the flight attendant refused to allow Plaintiff to use the "front bathroom" without any reasonable cause or justification, but allowed white, non-Muslim, and non-first-class passengers to use the same bathroom without incident. Defendant further acted with discriminatory intent when the flight attendant maliciously trapped Plaintiff in the bathroom, with Plaintiff's child, against Plaintiff's will. Such an egregious act did not occur to any white passengers or non-Muslim passengers. Lastly, Defendant acted with discriminatory intent against Plaintiff by humiliating Plaintiff, publicly berating and belittling Plaintiff, by calling Plaintiff a "Terrorist", by unreasonably calling a "Terrorist Alert" against Plaintiff, and by having Plaintiff escorted off the plane by police.

46. Indeed, in acting in such an egregious and discriminatory manner, Defendant interfered with Plaintiff's right under Section 1981 to "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

47. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

48. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

49. Indeed, as a result of Defendant's actions, Plaintiff was left so upset and traumatized by the event that she was almost unable to board the return flight to Florida due to extreme

50. anxiety. Plaintiff spent the entire flight back to Florida trembling and experiencing physical manifestations of extreme stress and anxiety.

50. Further, Plaintiff has had a long history of claustrophobia. This fear in addition to the trauma of Plaintiff's terrible harassment has caused flying to become an extremely unnerving and anxiety ridden event for Plaintiff.

51. As a result of Defendant's actions, Plaintiff and her family are truly offended by outrageous and discriminatory actions of Defendant. Mr. Moghaddam notes he is accustomed to being profiled and discriminated against due to his religion and national origin. However, neither Plaintiff nor Mr. Moghaddam expected to be called in as a "terrorist alert" for using a bathroom. Notably, approximately fifteen years ago Mr. Moghaddam gave up a promising career in law to join the FBI. Mr. Moghaddam specifically joined the FBI and the Joint Terrorism Task Force in an attempt to change the negative narrative against Muslim Americans that occurred after 9/11. Mr. Moghaddam has devoted his career and life to helping the FBI by working in the Joint Terrorism Task Force, the Swat Team, and by working in an undercover program for the FBI. As such, the family feels extremely offended by Defendant's discriminatory and outrageous actions.

52. As a result of the acts and conduct complained of herein, Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

53. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages.

**FIRST CAUSE OF ACTION**
**FOR NATIONAL ORIGIN DISCRIMINATION UNDER SECTION 1981**

54. Plaintiff repeats and realleges each and every allegation in paragraphs one through fifty-three.

55. 42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

56. Defendant is a major domestic airline carrier and a public accommodation within the meaning of the above statute. Defendant subjected Plaintiff to discriminatory conduct while she was a passenger on American Airlines Flight AA2724 to New York by discriminating against Plaintiff based on Plaintiff's national origin (Middle Eastern).

57. To establish a claim under 42 U.S.C. § 1981, a Plaintiff must allege facts supporting the following elements, 1) the Plaintiff is a member of a racial minority; 2) Defendant's intent to discriminate on the basis of race; and 3) discrimination concerning one of the statute's enumerated activities. See Brown v. City of Oneonta, 221 F.2d 329, 339 (2d Cir. 2000).

58. Here, it cannot be disputed that Plaintiff is a member of a racial minority as an Middle Eastern woman.

59. Second, Defendant clearly discriminated against Plaintiff on the basis of her race and national origin as described herein in detail and based on Defendant's offensive and discriminatory treatment of referring to Plaintiff as a "terrorist", by locking Plaintiff in a bathroom against her will, and by publicly humiliating Plaintiff by calling in an unreasonable and malicious "terrorist alert" against Plaintiff.

60. Lastly, Defendant's discrimination of Plaintiff concerned one of the statutes enumerated activities, as it concerned Plaintiff's right to "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

61. As described herein, Defendant discriminated against Plaintiff based on Plaintiff's national origin (Middle Eastern) as evidenced by Defendant, through its employees, forbidding Plaintiff from using the "front bathroom" but allowing other non-first class passengers and non-Muslim passengers to use the same bathroom without incident; by trapping Plaintiff in the bathroom with Plaintiff's child against Plaintiff's will, by publicly berating and belittling Plaintiff, by calling Plaintiff a "Terrorist", by unreasonably and maliciously calling a "Terrorist Alert" against Plaintiff and her family simply for using the bathroom while being a Muslim Middle Eastern woman, and by having Plaintiff escorted off the plane by police.

62. As a result of Defendant's unlawful discriminatory conduct in violation of the Section 1981, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

63. As a result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
## RELIGION DISCRIMINATION UNDER THE NYSHRL

64. Plaintiff repeats and realleges each and every allegation in paragraphs one through sixty-three.

65. Executive Law § 296 2(a) provides that:

   a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

66. Defendant is a major domestic airline carrier and a public accommodation within the meaning of the above statute. Defendant subjected Plaintiff to discriminatory conduct while she was a passenger on American Airlines Flight AA2724 to New York by discriminating against Plaintiff based on Plaintiff's religion (Muslim).

67. Defendant Discriminated against Plaintiff based on Plaintiff's religion (Muslim) as evidenced by Defendant, through its employees, forbidding Plaintiff from using the "front bathroom" but allowing other non-first class passengers and non-Muslim passengers to use the same bathroom without incident; by trapping Plaintiff in the bathroom with Plaintiff's child against Plaintiff's will, by publicly berating and belittling Plaintiff, and by calling a Terrorist Alert against Plaintiff and her family simply for using the bathroom while being

11

a Muslim Middle Eastern woman, and by having Plaintiff escorted off the plane by police.

68. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

69. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
### NATIONAL ORIGIN DISCRIMINATION UNDER THE NYSHRL

70. Plaintiff repeats and realleges each and every allegation in paragraphs one through sixty-nine.

71. Executive Law § 296 2(a) provides that:

    b) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national

origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

72. Defendant is a major domestic airline carrier and a public accommodation within the meaning of the above statute. Defendant subjected Plaintiff to discriminatory conduct while she was a passenger on American Airlines Flight AA2724 to New York by discriminating against Plaintiff based on Plaintiff's national origin (Middle Eastern).

73. Defendant Discriminated against Plaintiff based on Plaintiff's national origin (Middle Eastern) as evidenced by Defendant, through its employees, forbidding Plaintiff from using the "front bathroom" but allowing other non-first class passengers and non-Muslim passengers to use the same bathroom without incident; by trapping Plaintiff in the bathroom with Plaintiff's child against Plaintiff's will, by publicly berating and belittling Plaintiff, and by calling a Terrorist Alert against Plaintiff and her family simply for using the bathroom while being a Muslim Middle Eastern woman, and by having Plaintiff escorted off the plane by police.

74. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

75. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION**
**RELIGION DISCRIMINATION UNDER THE NYCHRL**

76. Plaintiff repeats and realleges each and every allegation in paragraphs one through seventy-five.

77. New York City Administrative Code § 8-107 states:

> a. It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
> 1. Because of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly: (a) To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation; or (b) To represent to any person that any accommodation, advantage, facility or privilege of any such place or provider of public accommodation is not available when in fact it is available; or
> 2. Directly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that: (a) Full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status; or (b) The patronage or custom of any person is unwelcome, objectionable, not acceptable, undesired or unsolicited because of such person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status.

78. Defendant is a major domestic airline carrier and a public accommodation within the meaning of the above statute. Defendant subjected Plaintiff to discriminatory conduct while she was a passenger on American Airlines Flight AA2724 to New York by discriminating against Plaintiff based on Plaintiff's religion (Muslim).

79. Defendant Discriminated against Plaintiff based on Plaintiff's religion (Muslim) as evidenced by Defendant, through its employees, forbidding Plaintiff from using the "front bathroom" but allowing other non-first class passengers and non-Muslim passengers to use the same bathroom without incident; by trapping Plaintiff in the bathroom with Plaintiff's child against Plaintiff's will, by publicly berating and belittling Plaintiff, and by calling a Terrorist Alert against Plaintiff and her family simply for using the bathroom while being a Muslim Middle Eastern woman, and by having Plaintiff escorted off the plane by police.

80. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

81. As a result of Defendant's unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FIFTH CAUSE OF ACTION**
**NATIONAL ORIGIN DISCRIMINATION UNDER THE NYCHRL**

82. Plaintiff repeats and realleges each and every allegation in paragraphs one through eighty-one.

83. Executive Law § 296 2(a) provides that:

> c) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations,

> advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

84. Defendant is a major domestic airline carrier and a public accommodation within the meaning of the above statute. Defendant subjected Plaintiff to discriminatory conduct while she was a passenger on American Airlines Flight AA2724 to New York by discriminating against Plaintiff based on Plaintiff's national origin (Middle Eastern).

85. Defendant Discriminated against Plaintiff based on Plaintiff's national origin (Middle Eastern) as evidenced by Defendant, through its employees, forbidding Plaintiff from using the "front bathroom" but allowing other non-first class passengers and non-Muslim passengers to use the same bathroom without incident; by trapping Plaintiff in the bathroom with Plaintiff's child against Plaintiff's will, by publicly berating and belittling Plaintiff, and by calling a Terrorist Alert against Plaintiff and her family simply for using the bathroom while being a Muslim Middle Eastern woman, and by having Plaintiff escorted off the plane by police.

86. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

87. As a result of Defendant's unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## **JURY DEMAND**

88. Plaintiff requests a jury trial on all issues to be tried.

   **WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful practices prohibited by Section 1981, NYSHRL, and NYCHRL in that Defendant discriminated against Plaintiff on the basis of her National Origin (Middle Eastern) and Religion/Creed (Muslim).

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful practices.


Dated: Garden City, New York
       April 13, 2023

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____/s/_____
   Jitesh Dudani, Esq.
   *Attorneys for Plaintiff*

**Phillips & Associates, PLLC**
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107